## Consolidation Coal Co.'s Receivers v. Patrick et al.

(Decided June 1, 1934.)

**672**

E. C. O'REAR and J. E. CHILDERS for appellants.
WHEELER and WHEELER for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

The appellants, Robert C. Hill and others, as receivers of the Consolidation Coal Company, seek by this appeal to have reversed a judgment of the Johnson circuit court which affirmed an award of the Compensation Board of Kentucky made the appellee, C. H. Patrick, in the sum of $6,000 for total permanent disability caused by his accidental injury, while working in the company's mines.

On July 29, 1930, the appellee C. H. Patrick received an injury to his right leg while employed in cutting coal in the appellant Consolidation Coal Company's mine at Van Lear, Ky. The appellee thus describes the circumstances and character of the accident:

"I was caught in a mining machine with one foot on top of the rail with my toe resting over the rail and the machine came up and the wheel caught my toe; I was in a falling position at the time, and I went down and the machine traveling in the direction of the way I fell. I don't know what happened from that on. I saw the wheel catch my toe. At any rate, I got quite a flesh wound starting quite low on the calf of my leg and extending up to the knee, center of the knee and across the center of

the kneecap. This portion in front here, of my leg was so badly mangled that it all decayed and left me with an open sore there now that does not heal. I have also, well I don't know the medical term of it, but a very nearly exposed nerve in this scar which is very tender and touches all the time.''

Further Patrick testifies that as the result of the accident his leg was so badly injured that he is now, had been, and will continue to be, totally and permanently disabled from performing all manual labor.

The appellee Patrick, who at the time of his injury was about forty-nine years of age, had been for some twenty-one years prior to the injury a miner, working at different jobs in coal mines, and is therefore without training or skill in any other character of work. He and all the physicians testifying for him state that since his injury, he has never been able to work at any kind of labor, nor will he ever again be able to go back to his work at the mines or to perform any manual labor. Appellee has received medical treatment for his leg injury for nearly two years by both the company doctors and those of his own selection, but its ulcerous sore remains open and unhealed, which, with his anklyosed knee and foot bones and nearly exposed nerve in the leg scar, causes him to suffer almost continuously.

Upon application being made to the Workmen's Compensation Board for compensation, his case was submitted to the board on the testimony of plaintiff and the expert testimony of the physicians who had examined and treated appellee's injury. On December 20, 1932, the board, after reviewing the evidence heard by it, made an award, based on its finding of fact, as follows: That the appellee and appellant had accepted the provisions of the Workmen's Compensation Act (Ky. Stats. sec. 4880 et seq.) and were at the time of the injury operating thereunder; that the plaintiff was working for the defendant company when injured, and that his injury arose out of and in the course of his employment; that his average weekly wage was at the time sufficient to entitle him to maximum compensation, under the act. Further it found upon the questions of law involved: That the injury to plaintiff's leg was not covered by the specific schedule contained in section 18 of the act, section 4899, Ky. Stats., but that he was entitled to recover therefor under section 16 thereof or

section 4897 of the Statutes; that an employee can sustain an injury to his leg resulting in a disability greater than the loss of the leg and entitling him to compensation in excess of the amount allowed by section 4899 therefor; that "the impairment of a member is not to be compensated for on the basis of compensation allowed for the loss of a member, but under a general provision of act applicable to the disability sustained"; also that where an employee is by the proof shown to be so injured as to be thereby rendered totally and continuously unable to work, he is entitled, during said period, to compensation under section 4897 of the act; that "loss of a member," as provided for under section 4899 of the act, means severance of the member; and that the Legislature did not intend that compensation for a disabling injury to a member, impairing its usefulness, was to be limited to the amount provided in the specific schedule of section 4899 of the act, for the loss of the member.

Upon such findings of law and fact, the board, through the referee, awarded the plaintiff recovery of compensation for ninety-three weeks for total disability at the maximum sum of $15 a week and for three hundred and twelve weeks 65 per cent. partial disability at $9.75 per week; the said amount allowed to be credited by the sum of $950.40 found previously paid plaintiff on account of his injury.

Thereafter, the appellant coal company moved for a whole board review and asked that its prior award made December 20, 1930, be set aside on the grounds: (1) That the award made was greater than authorized by law, in that it was for $437 more than allowed for total disabilty under section 4899 of the Statutes; (2) that no injury having been sustained by the plaintiff to any part of his body but the leg, there was no reason to allow a greater compensation therefor than for the loss of his leg, which under section 4899 of the Statutes was 65 per cent. of the average weekly wage for two hundred weeks; and (3) that no weight was by the award given to the testimony of the five doctors who testified for the defendant to the effect that plaintiff's disability was not more than 35 per cent.

The full board, upon its requested review of the findings of the referee, found that his prior finding was justified as based upon the testimony of plaintiff and

his five or more doctors testifying for him to the effect that he was totally and permanently disabled from performing manual labor or from ever again resuming his occupation of working in mines. It therefore approved the referee's finding (as interpreted by the board as established by the proof) that the plaintiff was by his injury totally and permanently disabled and therefore was entitled to be awarded, as compensation therefor, the maximum sum of $15 per week, as in such case provided by section 4897 of the Statutes. It approved the award to the extent so made of permanent total disability but ordered that in so far as it allowed plaintiff recovery for only partial permanent disability for three hundred and thirteen weeks at $9.75, it be set aside and in lieu thereof that the following award be made:

"That defendant pay to plaintiff during the period of disability at the rate of $15.00 per week from the date of said injury on June 29, 1930, for a period of not longer than 415 weeks, but not exceeding in all the sum of $6,000, with interest on unpaid installments. * * * Said sum, however, to be credited by the amount heretofore paid by defendant, to-wit: $950.40. That in addition to the aforesaid compensation the defendant will pay to plaintiff the costs incurred by him for physicians, hospital bills and medical attention furnished to him on account of the aforesaid injury, if any remain unpaid, not exceeding the sum of $100.00."

From this award made upon review by the full board the appellant coal company appealed to the Johnson circuit court, where it was affirmed, and from that judgment this appeal is prosecuted.

The appellant criticizes the propriety of this judgment upon the grounds: (1) That for the injury disabling plaintiff's leg only, appellee should have been compensated for not more than the sum allowed for the loss of a leg; (2) that upon the application of the defendant for a full board review of a single member's award and in the absence of any application for review by the claimant, the board was without authority to increase the award from $4,000 to $6,000; (3) that the circuit court did not have jurisdiction to change the method of payment from installments to a lump sum, since no appeal whatsoever lies from an order of the board determining the method of payment by installments rather

than in a lump sum; and (4) that to entitle an employee to an allowance for doctors' bills, the claimant must show by evidence what expenses he actually incurred.

We will consider these objections in the inverse order in which made.

The fourth of these objections, attacking the board's award of not exceeding $100 to plaintiff for his costs incurred for physicians' and hospital bills on account of the aforesaid injury, we consider to be both frivolous and without merit. In Fame Armstrong Laundry Co. v. Brooks, 226 Ky. 22, 10 S. W. (2d) 478, 480, to a like criticism of a similar award made an injured employee for medical bills, the court said:

> "The board should not make an allowance under section 4883 unless there is testimony that the injured employee has incurred expenses for the purposes therein mentioned, but this does not mean that the injured employee must have actually paid the expenses so incurred. The testimony before the board does not show that appellee had actually incurred medical expenses in connection with her injury, but there was some evidence from which this fact may have been inferred."

In the instant case, the evidence shows that not only was the plaintiff treated by company physicians, but that he was also treated by numerous physicians of his own selection and at his own expense. In the quoted case there was "some evidence" but here there is abundant evidence from which to infer that the appellee had actually incurred medical expense to the extent of the amount allowed, in connection with his injury. The board's award of the $100 allowance to appellee for the payment of doctors' bills incurred by reason of his injury, as provided for by section 4883, we are of the opinion should not be disturbed as being one by the board found fully justified by the evidence before it.

It is next complained that the circuit court had no jurisdiction to change the method of payment from an installment basis to one payable in a lump sum. It may be conceded that no such authority is conferred upon the court by section 4907 of the Statutes, which is a part of the Workmen's Compensation Act, yet we do not anywhere find in the court's judgment any language justifying such criticism of it. The judgment provides

that the defendant coal company shall pay the plaintiff "during the period of disability at the rate of $15.00 per week from the date of said injury, for a period of not longer than four hundred and fifteen weeks, but not exceeding in all the sum of $6,000." It would appear that the quoted language of the award is in itself sufficient answer to the criticism, for it expressly stipulates that the award is to be paid at the rate of $15 per week. As stated by appellant, this court, in the case of Wakenva Coal Co. v. Deaton, 233 Ky. 393, 25 S. W. (2d) 1024, 1025, in discussing section 4907, Kentucky Statutes (providing for the board's awarding a lump sum), said that it "was intended to meet special cases and to permit the board to commute future payments of compensation or any part thereof to a lump sum, where it determined that it would be for the best interest of either party, and would not subject the employer or his insurer to an undue risk of overpayment"; also, "that the Legislature regarded the commutation * * * purely as an administrative feature of the act, and lodged the final determination of that question in the board." However, we do not find, even while approving and conceding that such is its proper construction, that the same has been in any way violated by the judgment complained of, which we interpret as only affirming the award made to appellee by the board of compensation in the sum of $6,000, to be paid the appellee at the rate of $15.00 a week covering a period of four hundred and fifteen weeks.

Appellant next complains that the board, by increasing its prior award, exceeded the authority and power given it under the Compensation Act, when applied to for its review for the purpose of its reduction; that the prior award was before the board for review only upon the application of appellant, seeking its downward revision. The appellant contends that the board's right and authority, when acting upon its motion for a review, was confined to denying or granting its application for a reduction, and that it was not authorized, when denying its request to lower the award, to grant a different and unasked for relief, not sought by the review, by increasing it.

We find no such limitation or restriction imposed upon the board by the provisions of the act, when granting a full board review of a prior award for the purpose of correcting any error or injustice it may dis-

cover to have been therein made. Section 4902, Kentucky Statutes, provides as follows:

"Upon its own motion or upon the application of any party interested and a showing of change of conditions, mistake or fraud, the board may· at any time review any award or order, ending, diminishing or increasing the compensation previously awarded, within the maximum and minimum provided in this act, or change or revoke its previous order. * * *"

In addition to this, by section 4987 it is provided: "The rule of law requiring strict construction of statutes in derogation of the common law shall not be applicable to the provisions of this act."

The rules for the construction of the statute have been thus announced:

"In interpreting such an act all presumptions will be indulged in favor of those for whose protection the enactment was made, and who have by the terms of the act and by their own voluntary agreement been deprived of the enforcement of their rights in the courts of this state." Workmen's Compensation Board v. U. S. Coal & Coke Co., 196 Ky. 833, 245 S. W. 900, 902.

"This act has been in operation since its adoption in 1916, and a number of its provisions have been construed by this court, and at all times a liberal construction has been adopted in order to effectuate its purposes, which are to afford a speedy and scientific adjustment of compensation for injuries sustained by an employee, arising out of and occurring in the course of· his employment, and caused by traumatic accidental injury." Ashland Iron & Mining Co. v. McDaniel, 202 Ky. 22, 258 S. W. 943, 945.

The language of the statute clearly confers power upon the board, when making a whole board review of a previous award, to end, diminish, or increase the compensation so previously awarded upon its discovery of any change of condition, mistake, or fraud made therein. The whole matter, both of evidence and finding thereon, is brought anew before them upon review for either partial or total change or correction as may be found justified and proper. The language of the re-

visory provision of the act in no wise limits the power given the board to making only such change in its previous award as may be asked by the one seeking the review either for the purpose of its reduction or for its increase. Clearly under the statute it is the right of the board, when reviewing such previous finding and award, to make such change as may be found proper upon its reconsideration of the whole record, whether it be by way of reduction or increase or even the ending of the whole award made.

We will now consider appellant's final contention that the board erred in allowing the appellee, for his injury disabling only his leg, a larger sum in compensation therefor than is by section 4899 of the Statutes allowed for the loss of a leg.

The appellant argues that this is the major question involved on this appeal, viz.:

"Has the Compensation Board a legal right to award total disability to the body as a whole for the loss of a limb which does not affect any other part of the body?"

That is to say, has it the legal right to award total disability for an injury to a leg, where no other part of the body is affected by the injury? In denial of the board's possession of such right, appellant argues that by section 4899 of the Statutes it is provided that, for the loss of a leg, the injured party shall be paid compensation at the rate of 65 per cent. of his average weekly wages for the period of two hundred weeks and that such right of allowance is the complete provision made by the statutes for the payment of compensation for an injury where it involves only a leg. Further it argues that since, had the leg been amputated, appellee could have received not more than the stated compensation provided by the section for the loss of his leg, it became a matter resting entirely with him as to whether or not he chose to have his leg amputated and accept the designated compensation therefor; that, as the employer has no legal right to enforce its amputation and the appellee, as the injured party, having elected not to have the limb amputated, he should be forced to receive the compensation provided by law for the loss of his leg, whether amputated or not; and that (it insists) it is unjust and would be folly to enact a statute specifically providing for compensating an employee for the

loss of a limb and then apply, as compensation for such specific loss, another statute awarding a different and larger compensation provided for total disability, when no other part of the body is affected by the suffered injury except the leg thereby disabled.

This question was recently before this court in the case of Lehigh Construction Co. v. Womble, 251 Ky. 150, 64 S. W. (2d) 479. There the facts were that an injured employee, a carpenter some fifty-two years of age, had fallen from a scaffold, fracturing his arm. The evidence for claimant was that by reason of his injury he was disabled for work in any other manual labor. The evidence for the defendant was that Womble had simply lost the use of his arm for the present by reason of his injury, and except as to the disabled arm, there was no injury entitling him to compensation. The court affirmed the award of the board finding his condition one of total, permanent disability and allowed him the maximum compensation provided by the act for such case, on the ground that he had become disabled for labor as a carpenter and was in a worse condition than had he simply lost his arm.

The legal principle of this case we conceive adversely answers the argument of appellant that the appellee cannot be held to suffer a greater injury through the disabilty of having his injured leg made painful and useless to him by reason of its incurable sores and ankylosis of the foot and knee joint than had his injury resulted in the loss of his leg. Had such loss occurred through its amputation rendered necessary by reason of its injury, section 4899 of the statutes providing as compensation therefor 65 per cent. of the injured party's weekly wage for a period of two hundred weeks would have applied, because such was the agreement of the parties made when electing to operate under the provisions of the act. In the instant case, the result of plaintiff's leg injury received in the course of his employment is, as found by the board, that he is handicapped, both by the loss of the use of his leg and also by reason of his general disabled condition resulting from the pain and suffering caused him thereby, as, under the evidence, entirely disables him from the performance of the work of his occupation, and that he will continue to be thereby permanently and totally disabled. In such situation the question becomes not whether he is in worse plight through having an in-

jured leg which so disables him from work than he would be had he lost his leg, but whether or not his general condition, resulting by reason of his injury, is one coming within the provisions of section 4897 of the Statutes, providing that for an injury causing total and permanent disability for work, his employer shall pay him the maximum compensation provided by the section therefor. The compensation allowed, is for the disability caused by the injury—which prevents the employee from doing the work of his occupation—not damages for the loss of a member.

On like facts as here in evidence, in Simpson v. New Jersey Stone, etc., Co., 93 N. J. Law, 250, 107 A. 36, 37, the court in upholding a like award for total permanent disability said:

"The original injury was a very bad fracture of the arm, which was compound, and became infected and discharged pus for a long period. Amputation was seriously considered, but the arm was saved. There was, however, a poor recovery, and the patient had several abscesses, and at the time of the hearing was suffering, as the court found, with a severe neuritis caused perhaps by minor nerves being involved with the callous of the fracture, which, in the opinion of his physician, made him totally unfit for work, and there was evidence to support the finding that this condition would continue indefinitely unless the arm were amputated. Prosecutor's claim is that the award cannot exceed that authorized for the loss of an arm, but to this we do not agree. Cases are readily conceivable in which total and permanent disability exist without the loss of or injury to any specific member. If the physical conditions in the present case as the court found them to exist at the time of the hearing created a total disability which was permanent unless the arm were amputated [and we think the evidence justified a finding of such a condition], the case of Feldman v. Braunstein, 87 N. J. Law, 20, 93 A. 679, controls. Petitioner is not required to undergo a serious operation such as amputation of the arm at the shoulder."

In the Womble Case, supra, the court, upon appeal, upheld the board's award made upon similar facts shown by the evidence, holding an employee, who frac-

tured his arm, to be permanently disabled to do manual labor and entitled to receive therefor the compensation awarded an employee for total and permanent disability as provided for under section 4897 of the Statutes.

There was in the instant case, as in the Womble and Simpson Cases, supra, ample evidence before the board to support its finding that the appellee was permanently and totally disabled by reason of his leg injury, resulting in rendering him permanently and totally incapable of ever again engaging in mining or other manual labor. The board's award being thus supported by competent evidence, the board's findings of fact are conclusive and will not be disturbed. The rule is that if there is any evidence to support the result reached by the board, it is binding upon the courts. Broadway & Fourth Ave. Realty Co. v. Metcalfe, 230 Ky. 800, 20 S. W. (2d) 988; Big Elkhorn Coal Co. v. Burke, 206 Ky. 489, 267 S. W. 142; Broughton's Adm'r v. Congleton Lumber Co., 235 Ky. 535, 31 S. W. (2d) 903; Dunn v. Eaton, 233 Ky. 699, 26 S. W. (2d) 513.

We therefore conclude that, the trial court's judgment being in harmony with our views as herein expressed, the same should be, and it is, affirmed.